[Civ. No. 12915. First Dist., Div. Two. Dec. 31, 1945.]

BERTHA HERMAN, as Administratrix etc., Appellant, v. JOSEPH L. MORTENSEN, Individually and as Executor etc., et al., Respondents.

Bernal & Bernal and Jean Bernal for Appellant.

J. W. O'Neill and J. S. Blaine for Respondents.

GOODELL, J.—This is an appeal from a judgment in favor of the defendants notwithstanding a verdict in favor of the plaintiff.

The action was brought by a plaintiff out of possession against defendants in possession of real property, and although in the form of a suit to quiet title it possesses "the essential characteristics of the old legal action of ejectment" (*Southern Pacific Land Co.* v. *Dickerson,* 188 Cal. 113, 116 [204 P. 576]; 15 Cal.Jur. p. 335, § 12) and, accordingly was tried to a jury.

The case involves a piece of residential property in Berkeley with a frontage of 40 feet on Piedmont Avenue and a depth of 135 feet, which for some years prior to July 9, 1934, was owned and occupied by Virginia R. G. Robertson. On that date Mrs. Robertson executed and acknowledged a deed of gift of the property to Helen B. Glenn, her sister-in-law, and the next day delivered it to the defendant Redmond C. Staats who, as Mrs. Robertson's attorney, had prepared it under circumstances presently to be related. Mr. Staats held the deed in his safe and after Mrs. Robertson's death (which was on July 24, 1943), he learned that the grantee had died

over five years theretofore (on November 29, 1937). The deed has not been recorded; Mr. Staats produced it in court, and it was introduced in evidence.

The defendant Mortensen is the executor of Mrs. Robertson's last will and testament and the residuary legatee and devisee thereof. He has been in possession, as executor, and claims title in himself under the will, subject to administration. Mr. Staats was joined as a defendant, and promptly filed a disclaimer.

About July 5, 1934, Mrs. Robertson requested Mr. Staats to draw a will for her, which she executed that day, wherein she devised the property in question to Helen B. Glenn, and named her as executrix. After making the will Mrs. Robertson told Mr. Staats that she wanted also to deed the property to Mrs. Glenn. He advised her that the making of such a deed "was a very dangerous proceeding" which "invariably brought trouble" and advised her "very strongly against it." He testified: "I told Mrs. Robertson that she had already provided in her will for that property to go to Mrs. Glenn and that it was the safest and best way to do it. I told her further that if she made a gift deed of the property it would be necessary for her to deliver the deed to some person, that she must deliver it to Mrs. Glenn and if Mrs. Glenn received the deed that she could record it and it would be her property. I told her she could give it to a third person if she wished it to be delivered to Mrs. Glenn upon her death, in which case she would have the right to live in the property and have all the profits from the property and upon her death the delivery to Mrs. Glenn would give Mrs. Glenn the property, that she couldn't sell it to anybody else, that she couldn't deed it to anybody else, that if she gave the deed to a third person that that third person could not return it to her; that if she wanted to dispose of the property afterwards in any way that Mrs. Glenn would have to give her a deed back and the deed she made to Mrs. Glenn would have to be recorded and the deed from Mrs. Glenn to her would have to be recorded. I went into the matter very fully." Further that "She said she wanted to execute it and she asked me if it could be delivered to me and if I could hold it and deliver it to Mrs. Glenn upon her death. I told her I could and I would, but I would rather not do so." The deed was given to him by Mrs. Robertson without any written instructions, and he gave her no receipt for it. It was "all verbal." Nothing was

said as to what would happen to the deed in the event Mrs. Glenn predeceased Mrs. Robertson, and no instructions were given Mr. Staats to record the deed after Mrs. Robertson's death. Mr. Staats was asked, "Did Mrs. Robertson ever at any time say to you that she intended to part with the immediate ownership of the property at the time she signed the deed" to which he replied, "She didn't tell me that; I told her that if she gave that deed to any third party to deliver that that would be the consequence and she asked me if I would, could hold the deed, and I told her that I would."

After the deed was delivered to him there was no communication between Mrs. Robertson and Mr. Staats on the subject, and the record is silent as to whether Mrs. Glenn ever learned of its existence. On February 13, 1941 Mrs. Robertson executed the olographic will now in probate.

The question presented for decision is whether title ever vested in Helen B. Glenn.

Section 1059, Civil Code, reads: "Though a grant be not actually delivered into the possession of the grantee, it is yet to be deemed constructively delivered in the following cases: . . . "2. Where it is delivered to a stranger for the benefit of the grantee, and his assent is shown, or may be presumed."

The "rule established by a long line of decisions in this state headed by the pioneer case of *Bury* v. *Young,* 98 Cal. 446 [33 P. 338, 35 Am.St.Rep. 186]" is stated in the recent case of *Wilkerson* v. *Seib,* 20 Cal.2d 556, 560 [127 P.2d 904] as follows: "that the grantor's irrevocable delivery of a deed to a third person, with instructions that it be given to the grantee upon the grantor's death, has the effect of vesting the title to the property immediately in the grantee, qualified only by a life tenancy in the grantor, and the depositary thereby becomes the *trustee* of the deed for the grantee. (See, also, *Moore* v. *Trott,* 156 Cal. 353 [104 P. 578, 134 Am.St.Rep. 131]; *Husheon* v. *Kelley,* 162 Cal. 656 [24 P. 231); *Williams* v. *Kidd,* 170 Cal. 631 [151 P. 1, Ann.Cas. 1916E, 703], and *Hunt* v. *Wicht,* 174 Cal. 205 [162 P. 639, L.R.A. 1917C, 961].)"

The court gave the jury an instruction substantially in accord with the rule just quoted. The verdict carries with it an implied finding that the grantor intended that title should immediately vest in the grantee, and the first question presented is whether there is evidence of any substantiality (see *Estate of Green,* 25 Cal.2d 535, 546 [154 P.2d 692];

*Card* v. *Boms,* 210 Cal. 200, 202 [291 P. 190]) to support the implied finding that title was intended to, and did, vest immediately in the grantee. In the conversation between Mrs. Robertson and Mr. Staats four days before the deed was executed he did most of the talking it is true, but what he then advised her as to the legal effect and consequences of her proposed action, taken in connection with her action in making the deed following such advice, furnished, in our opinion, a sufficient foundation for the jury's finding. She was thoroughly and correctly advised in accordance with the rule quoted above and it would seem that she fitted her action to such advice. It would appear that the evidence of her intent is just as strong as if *she* had made the declarations, instead of adopting and acting on what was said to her by her legal advisor.

The second question presented is whether there is evidence of any substantiality to support the implied finding that the grantee accepted or assented to the deed.

The court instructed the jury that "The law presumes that the grantee has accepted the grant or gift even though he has no knowledge of it or there is no express consent to such gift, where such gift would be beneficial to such grantee." The jury was also told that before finding in favor of the plaintiff it must believe "that the transfer was beneficial to Mrs. Glenn." The verdict in plaintiff's favor carries with it an implied finding that it *was* beneficial.

The deed itself is evidence that the transfer was beneficial to the grantee. It is a *deed of gift;* it is free, on its face, of all burdens and obligations and there is no extrinsic evidence of any burden or obligation. There is no evidence of any covenant running with the land, or of any other covenant; nor of any easement or servitude. There is no evidence of any incumbrance against the property, or of any indebtedness at all owed by the grantor. On the other hand there is evidence that the property yields some income.

There is not a word in the record to indicate that the conveyance was *not* beneficial to the grantee.

Nobody will contend that a grantee is bound to accept or assent to a grant. The reason for the rule with respect to assent has probably never been stated more concisely than it was in *De Levillain* v. *Evans,* 39 Cal. 120, 122, as follows: "In respect to the question of acceptance by the donee, as we understand the civil law, it does not differ materially from

the common law. Under neither is the donation valid and obligatory until it is accepted. It may be that the donee does not desire to have the property. There may be burdens growing out of the ownership which he does not choose to assume. If he affirmatively declines to accept the donation the law does not force it upon him against his will. This must be so upon every principle of reason and justice. Nevertheless, *in the case of an adult donee, if the donation is for his advantage he will be presumed to have accepted it unless the contrary appears.''* (Emphasis added.) This case has never been modified or questioned. It was followed in *Jennings* v. *Jennings,* 104 Cal. 150, 154 [37 P. 794] (a case of a minor); *Estate of Yano,* 188 Cal. 645, 650 [206 P. 995] (a minor); *Smith* v. *Lombard,* 201 Cal. 518, 526 [258 P. 55] (an adult); *Knox* v. *Kearney,* 40 Cal.App. 290, 292 [180 P. 661] (an adult); *Neely* v. *Buster,* 50 Cal.App. 695, 700 [195 P. 736] (an adult); *Neil* v. *Gross* (Cal.) 101 F.2d 153, 155 (an adult). It was most recently followed in *Estate of Kalt,* 16 Cal.2d 807, 813 [108 P.2d 401, 133 A.L.R. 1424], a case involving an adult, where it is said: " 'There is no intrinsic difficulty in regarding a conveyance as effective to vest property in the grantee even before the latter has consented to receive it.' (Tiffany, Real Property, 3d ed., § 1055, p. 253; Brown, Personal Property, § 50; Bogert, Trusts and Trustees, § 150, p. 447.) This principle is recognized by the majority of the courts, including those in California, when they hold that a beneficial gift is presumed to be accepted by the donee even without his knowledge or consent. (See Cal. Civ. Code, § 1059, subd. 2; *Neely* v. *Buster,* 50 Cal.App. 695 [195 P. 736]; *De Levillain* v. *Evans,* 39 Cal. 120; . . .)''

*Green* v. *Skinner,* 185 Cal. 435 [197 P. 60] is relied on by the respondents. That case is distinguishable from this in three respects. 1st. It appears affirmatively there that the grantee knew nothing whatever of the existence of the deed (in the hands of a third person) until after the grantor's death, while here the record is silent as to whether or not Mrs. Glenn knew of the existence of this deed. Over three years elapsed from the time when the deed was executed until her death, during which time she might well have learned of it from Mrs. Robertson or otherwise. 2nd. The rule of presumptive assent was not invoked in that case, as it is in this, and is not mentioned in the opinion. 3rd. There is not in the case at bar any conflict between rights derived from the

deed and rights of third persons which had already vested, for there the rights of the surviving joint tenant had existed from the time of the creation of the joint tenancy. (See *Zeigler* v. *Bonnell*, 52 Cal.App.2d 217, 220 [126 P.2d 118].) In the case at bar the controversy is simply between those standing in the shoes of the grantor, on the one hand, and those in the shoes of the grantee on the other, with no rights of third persons intervening.

The same may be said of *Hibberd* v. *Smith*, 67 Cal. 547 [4 P. 473, 8 P. 46, 56 Am.Rep. 726], also relied on by the respondents, where there was the intervention of the rights of a creditor of the grantor. In that case, unlike *Green* v. *Skinner*, the question of presumptive assent based on the deed being beneficial to the grantee *was* presented and discussed, and the court said that it was not convinced that the deed on its face was in fact beneficial to the grantee.

The decision in *Wilkerson* v. *Seib, supra*, furnishes a complete answer to the argument based on *Green* v. *Skinner, supra*. In *Wilkerson* v. *Seib* the contest was between the grantee and the estate of the grantor. The court expressly held (20 Cal.2d 560) that "when Mrs. Herbst in 1931 made an absolute and unconditional delivery of the deed to Mitchell, title to the property involved passed at once to the plaintiff, the grantee, subject to a life estate in the grantor." In the Wilkerson case the grantee did not learn of the deed until approximately three years after the grantor's death and over eight years after its delivery to Mitchell. We can see no difference in principle between that case and this. In that case, as in this, there was no evidence of actual acceptance before the grantor's death. Indeed in that case there was express evidence of the lack of actual (as distinguished from presumptive) acceptance, since it was affirmatively alleged and proved that the grantee did not learn of the deed until after the grantor's death and the proof showed also that the deed never was delivered to the grantee. The case therefore expressly stands for the rule that as between the grantee and the estate of the grantor the presumption of acceptance is sufficient to vest title in the grantee. *Green* v. *Skinner* was considered by the court (20 Cal.2d 560) and held not to control the rights of the grantee against the grantor's estate.

In *Neely* v. *Buster*, 50 Cal.App. 695, 700 [195 P. 736], the court quoted from *Bryan* v. *Wash*, 2 Gilm. (Ill.) 557, 565, as follows: " 'The delivery may be made by the grantor himself

or by anyone authorized to make the delivery, nor is it indispensable that the delivery be made to the grantee, or even to any person authorized by the grantee to accept the deed, and if the delivery be made to a stranger, for and in behalf of the grantee, and to his use, it is a good delivery, although the grantee may in truth be entirely ignorant of the conveyance, for, if the delivery be absolute, the assent of the grantee is presumed from the fact that the conveyance is beneficial to him.' '' A petition for hearing by the Supreme Court was denied.

It is argued by the respondent that Mr. Staats acted solely as attorney for Mrs. Robertson and never represented Mrs. Glenn. The law, as restated in the Wilkerson case, is that when the grantor delivered the deed to Mr. Staats, he as depositary thereby became "the trustee of the deed for the grantee." Any attorney-and-client relationship theretofore existing became superseded by the trust relation.

It is also argued that after the deed was made, no change was made in the fire insurance policy covering the property, Mrs. Robertson continued to pay the taxes and insurance, collected the rents, and paid for repairs. All this, of course, is consistent with the life tenancy which she retained, under the rule restated in the Wilkerson case. (*Knudson* v. *Adams,* 137 Cal.App. 261 [30 P.2d 608].)

And finally, it is argued that "There is no evidence in the record as to the value of the real property in controversy, whether or not it was mortgaged, whether or not it was burdened with covenants running with the land or whether or not there were other conditions rendering a gift thereof beneficial or detrimental." Subdivision 2 of section 1059 differentiates between the case where the grantee's "assent is *shown*" and the case where such assent "may be *presumed.*" The instant case is one where there is no pretense that actual assent was shown. Presumed assent alone is relied on. We are satisfied that the burden of showing that this deed was *not* beneficial was upon the respondents. It has been pointed out earlier that the instrument was a deed of gift, and that it bore on its face no evidence of any burdens whatever. The record shows, moreover, that the property is income-producing. From these facts the beneficial character of the transaction sufficiently appears, in our opinion, to bring the presumption of assent into operation. If that be true, it would be incumbent on the respondents to dispel and

overcome the presumption by evidence that the transfer was burdensome or detrimental to the grantee. The jury as heretofore observed impliedly found under proper instructions that the deed was beneficial, and we are satisfied that there is evidence of sufficient substantiality in the record to support such implied finding.

With no rights of creditors or other third parties intervening, there is no reason why the presumption of assent should not, and did not in this case, come into operation at the time when the grantor placed the deed in the hands of the grantee's trustee even though the grantee at that time knew nothing about it. (*Estate of Kalt, supra.*)

A nephew of Mrs. Glenn testified that between the years 1923 and 1930 he occasionally took Mrs. Glenn to Mrs. Robertson's home (the property here involved) and heard Mrs. Robertson say to his aunt "Oh, you know, if anything happens to me this is your property" to which Mrs. Glenn expressed her pleasure and assent. From this it is argued that an anticipatory or a prospective assent was given. *Boye v. Boerner,* 38 Cal.App.2d 567 [101 P.2d 757] is cited in support of this contention, but in that case there was an antecedent agreement that security would be given which actually contemplated the deed of trust which was thereafter made.

The conversations to which the nephew testified were held some years before Mrs. Robertson made the deed and in our opinion were too remote to be invoked as an actual assent in advance. The most that can be claimed for them is that the jury might have inferred, from the fact that Mrs. Robertson had expressed her intention to leave the property to Mrs. Glenn, that after she had actually made the deed she had informed her that the intention expressed some years before had been actually carried into execution by the making of the deed. Over three years elapsed from the time the deed was made until Mrs. Glenn's death, during which time she might have told her of the deed. However, we are satisfied that the reason first given, namely, that assent is to be presumed as of the time when the deed was delivered is the proper ground upon which to base the decision in this case.

The judgment is reversed with directions to the trial court to enter judgment in favor of the plaintiff on the verdict.

Nourse, P. J., and Dooling, J., concurred.